NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| N&S RESTAURANT LLC, | |
| Plaintiff, | Civil No. 20-05289 (RBK/KMW) |
| v. | **OPINION** |
| CUMBERLAND MUTUAL FIRE INSURANCE COMPANY, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon (1) Defendant's Motion to Dismiss (Doc. 6) and (2) Defendant's Motion to Dismiss Amended Complaint (Doc. 15). For the reasons stated herein, the Motion to Dismiss the Amended Complaint (Doc. 15) is **GRANTED**, and the Motion to Dismiss (Doc. 6) is **DENIED AS MOOT**.

**I.     BACKGROUND**

This action arises out of an insurance coverage dispute. Plaintiff is N&S Restaurant LLC, the operator of the Cara Mia restaurant in Millburn, New Jersey. (Doc. 13, "Am. Compl." ¶14.) Plaintiff receives property insurance from Defendant, Cumberland Mutual Fire Insurance Co. (*Id.* ¶16.) During all relevant times, Plaintiff was insured via Defendant's Businessowners Policy (the "Policy"). (Doc. 15-3 "Policy".) On March 16, 2020, Governor Murphy issued Executive Order No. 104, suspending the operation of non-essential retail businesses in response to the ongoing COVID-19 pandemic. (Doc. 15, "Mot." at 4.) Plaintiff thereafter filed a claim with Defendant via the Policy for loss of business income caused by the Executive Order. (*Id.*)

1

At a broad level, Plaintiff's insurance Policy provides coverage for "direct physical loss of or damage to Covered Property at the described premises . . . caused by or result[ing] from any Covered Cause of Loss." (Policy at 1.) "Covered Causes of Loss" include "[d]irect physical loss unless the loss is excluded or limited[.]" (*Id.* at 2.) Plaintiff requested coverage under three separate Policy provisions: (1) the "Business Income" provision; (2) the "Extra Expense" provision; and (3) the "Civil Authority" provision. (*Id.* at 5–6.)

The "Business Income" provision provides as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

(*Id.* at 6.)

The "Extra Expense" provision provides as follows:

> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(*Id.* at 8.)

The "Civil Authority" provision provides as follows:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises

(*Id.* at 9.)

The Policy also denies coverage under several enumerated exclusions. Under the Virus Exclusion, Defendant "will not pay for loss or damage caused directly or indirectly by" any "Virus

or Bacteria," which is any "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 17, 20.) The Virus Exclusion includes an anti-concurrent causation preamble, which states that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss[.]" (*Id.* at 17.)

Defendant denied Plaintiff's request for coverage, citing two primary reasons: (1) the claim was barred by the Virus Exclusion, and (2) the claim did not arise out of physical loss or damage as required by each of the applicable provisions. (Mot. at 4.) Plaintiff thereafter filed this suit, seeking a declaratory judgment that Defendant is required to provide coverage under the Business Income, Civil Authority, and Extra Expenses provisions of the Policy. Plaintiff additionally pled a cause of action for breach of contract for failure to provide coverage under each of these provisions. (Am. Compl. ¶¶60–106.) Plaintiff brings this as a purported class action on behalf of it and all others similarly situated. Defendant filed a Motion to Dismiss (Doc. 6), and Plaintiff subsequently amended its Complaint (Doc. 13). Defendant then filed a Motion to Dismiss the Amended Complaint. (Doc. 15.)

## II.   LEGAL STANDARD

### A.  Standard on Motion to Dismiss

When deciding a motion to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the nonmoving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "The inquiry is not whether plaintiff will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id.* In deciding a motion to dismiss, the court may rely on "the complaint, attached exhibits, and matters of public record" without converting the motion to one of summary judgment. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

### B. New Jersey Law on Insurance Policy Interpretation

A court exercising diversity jurisdiction over an insurance dispute must apply state substantive law. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 64 (1938). Both parties submit that New Jersey law applies. Under New Jersey law, the interpretation of an insurance policy is a "question of law." *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 46 A.3d

1272, 1276 (N.J. 2012). An insurance policy should be "interpreted according to its plain and ordinary meaning." *Voorhees v. Preferred Mat. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). Where the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994). The court "should not write for the insured a better policy of insurance than the one purchased." *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)). Where the terms of the policy are ambiguous, however, the ambiguity is ordinarily resolved in favor of the insured. *See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004). However, ambiguities will not be forced into an insurance policy nor will the words of an insurance policy be artfully construed to include a type of coverage outside the scope and nature of the policy in question. *Id.*

Exclusions within an insurance policy are narrowly interpreted and construed in accord with the objectively reasonable expectations of the insured. *Princeton Ins. Co. v. Chunmuang,* 698 A.2d 9, 11 (N.J. 1997). Although exclusionary clauses are construed narrowly, they will be applied where they are "specific, plain, clear, prominent, and not contrary to public policy." *Ashrit Realty LLC v. Tower Nat'l Ins. Co.*, A-1647-13T4, 2015 WL 248490, at *4 (N.J. Super. Ct. App. Div. Jan. 20, 2015) (citing *Homesite Ins. Co. v. Hindman*, 992 A.2d 804, 807 (N.J. Super. Ct. App. Div. 2010)). The Third Circuit and courts within this Circuit have regularly granted motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusion to coverage. *See Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011) (affirming dismissal of complaint because the unambiguous policy exclusion applied as a matter of law); *Nautilus Ins. Co. v. Shawn Owens Inc.*, 316 F. Supp. 3d 873, 878 (E.D. Pa. 2018) (finding exclusion barred insurance coverage under policy and granting insurer's Rule 12(c) motion); *Nautilus Ins.*

*Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636, 643 (E.D. Pa. 2018), *aff'd*, 781 F. App'x 57 (3d Cir. 2019) (granting insurer's Rule 12(c) motion because the assault and battery exclusion comprehensively barred all conduct alleged).

### III.    DISCUSSION

Defendant asserts it is not required to provide coverage to Plaintiff under the Policy for three reasons: (1) Plaintiff did not "sustain 'direct physical loss' or 'damage' to the insured premises, precluding Business Income and Extra Expense coverage"; (2) Plaintiff did not "sustain loss as a consequence of damage to any property . . . precluding 'Civil Authority' Coverage"; and (3) the "Virus Exclusion independently bars coverage" under all provisions. (Mot. at 13, 26, 28.) As both parties note, courts even within the state of New Jersey have come to differing and split conclusions regarding the interpretation of the term "direct physical loss." However, the Court finds it unnecessary to decide whether Plaintiff's claim resulted from direct physical loss or damage because the Court finds that the Virus Exclusion plainly applies here, barring coverage.

#### A.    The Virus Exclusion Applies

The Virus Exclusion states that "[Defendant] will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness[,] or disease." (Mot. at 28.) Additionally, the Virus Exclusion contains an "anti-concurrent causation preamble," which states that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (*Id.*) Defendant asserts that the Virus Exclusion "in conjunction with the anti-concurrent causation preamble, expressly excludes coverage of an otherwise covered loss that is related directly or indirectly to a virus." (*Id.* at 31.) Defendant contends that the "Executive Order—both by its own terms and according to the allegations in the Complaint—arose out of"

COVID-19. (*Id.*) Therefore, because COVID-19 caused the Executive Order mandating closure of all non-essential businesses, the Virus Exclusion applies.

In response, Plaintiff argues that the Virus Exclusion does not apply because the "cause of Plaintiff's loss was the Closure Orders, not the coronavirus." (Opp. at 15.) Plaintiff supports this point by asserting that "Plaintiff's claimed loss is not for decontaminating its premises as a result of a coronavirus infestation." (*Id.* at 16.) Therefore, because the closure orders from Governor Murphy *caused* the loss of business income, the Policy still applies, and Defendant must provide coverage. (*Id.* at 16–17.)

The Court finds Plaintiff's arguments unpersuasive. The anti-concurrent causation clause specifically states that loss caused directly *or indirectly* by a virus is excluded. (*See* Policy at 17) (emphasis added.) This is true regardless of any other event *in any other sequence* that contributes to the loss. (*Id.*) (emphasis added.) There is no doubt that COVID-19, a virus, caused Governor Murphy to issue the Executive Order mandating closure of Plaintiff's restaurant. Therefore, COVID-19 is still a cause of the closure because the Virus Exclusion *specifically provides for such indirect causation*. There is no requirement, as Plaintiff suggests, for the virus to have physically caused the loss, such as via contamination of the property. Although costs for decontamination would certainly be a direct loss caused by the virus, this is not the only possible loss that would trigger the Virus Exclusion. By its plain language, the Virus Exclusion applies, barring coverage.

Plaintiff additionally attempts to invoke New Jersey's "Appleman Rule." Under this Rule, normally, "when an insurance policy uses an exclusion which bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the 'efficient proximate cause' of the loss." *Zurich Am. Ins. Co. v. Keating Bldg. Corp.,* 513 F. Supp. 2d 55, 70 (D.N.J. 2007) (quoting *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.,* 854 A.2d 378, 385 (N.J.

2004)). Thus, an insured is normally afforded coverage where an "included cause of loss is either the first or last step in the chain of causation which leads to the loss." *Assurance Co. of Am., Inc. v. Jay–Mar, Inc.,* 38 F. Supp. 2d 349, 353 (D.N.J. 1999) (citing *Franklin Packaging Co. v. Cal. Union Ins. Co.,* 408 A.2d 448, 449 (N.J. Super. Ct. App. Div. 1979)). Accordingly, Plaintiff argues that the closure order, not COVID-19, was the proximate cause of its loss of business income. (Opp. at 16.)

However, this Court has previously found that, "exclusionary language designed to avoid the 'efficient proximate cause doctrine' is enforceable" under New Jersey law. *See Assurance*, F. Supp. 2d at 354. For example, in *Assurance,* the insured claimed that the damage sustained was caused by an overflow of rainwater from storm sewers, a covered cause of loss, while the insurer asserted that the damage was caused by surface water flooding, an excluded cause of loss. *Id.* at 351. There, the policy contained a clause stating "[w]e will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at 352. Therefore, although the first in the sequence of events was a covered loss, the court found that the insured was unable to recover because the contract specifically provided that there would "be no coverage for loss due to sequential causes even where the first or the last cause is an included cause of loss." *Id.* at 354.

Similarly, the plain language of the Virus Exclusion here indicates that the Policy was drafted to eliminate the efficient proximate cause doctrine. The Policy does not provide coverage for losses caused directly or indirectly by a virus, regardless of any other cause or event that contributes concurrently or in any sequence to the loss. (Policy at 17, 20.) This language demonstrates the parties' intent to contract around the efficient proximate cause doctrine, language

which courts have held is enforceable. *See Assurance*, F. Supp. 2d at 354. Thus, Plaintiff's Appleman argument is unpersuasive.

Moreover, a survey of the case law on this issue reveals that federal courts interpreting virtually identical "Virus Exclusions" have nearly unanimously determined that these exclusions bar coverage of similar claims. *See, e.g.*, *Wilson v. Hartford Casualty Co.*, No. 20-3384, 2020 WL 5820800, at *7 (E.D. Pa. Sept. 30, 2020) (holding that coverage was barred by a Virus Exclusion that stated that insurer "will not pay for loss or damage caused directly or indirectly by . . . virus . . . regardless of any other cause or event that contributes concurrently or in any sequence to the loss[.]"); *Diesel Barbershop, LLC v. State Farm Lloyds*, 20-CV-461, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) (holding that coverage was barred by Virus Exclusion stating that insurer "does not insure for a loss regardless of 'whether other causes acted concurrently or in any sequence within the excluded event to produce the loss'" and finding that "it was the presence of COVID-19 in . . . Texas that was the primary root cause of Plaintiffs' business temporarily closing."); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 20-cv-00401, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) (finding that coverage was barred by Virus Exclusion excluding coverage for "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress[.]"); *Franklin EWC, Inc. v. Hartford Financial Servs. Grp., Inc.*, 20-cv-04434, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (holding that coverage was barred by Virus Exclusion stating that "[w]e will not pay for loss or damage caused directly or indirectly by [virus]. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss[.]"); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Co. of Connecticut*, No. 20-cv-04423, 2020 WL 5938691, at *5 (C.D. Cal. Oct. 2, 2020) (same).

The Court is only aware of one opinion in which a federal court did not find, at the motion to dismiss phase, that the Virus Exclusion barred coverage. In *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Company*, the court found that "ambiguous aspects of the Policy ma[d]e determination of coverage inappropriate at this stage." 20-cv-1174, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020). However, that policy and its exclusions referenced several other documents that were unattached to the insurance policy and were unavailable to the court. *Id.* Accordingly, the court found that "[w]ithout the corresponding forms which [we]re modified by the exclusions, [it would] not make a decision on the merits of the plain language of the Policy to determine whether Plaintiff's losses were covered." *Id.* That is not the case here. Rather, the Court has all relevant Policy documents, and neither party argues otherwise.

Accordingly, based on the Court's independent evaluation of the Policy's Virus Exclusion and the wealth of well-reasoned opinions from other districts holding similarly, the Court finds that the Virus Exceptions bars coverage.

### B.  Plaintiff States No Claims for Relief

Because the Virus Exclusion bars coverage, Plaintiff is not entitled to coverage under the Business Income, Extra Expense, or Civil Authority provisions. Plaintiff's causes of actions seeking declaratory relief thus fail because Plaintiff has failed to provide a cognizable legal theory or set of facts about the Policy that would allow the Court to provide declaratory relief. *See Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 277 (1941) ("the District Court is without power to grant declaratory relief unless such a controversy exists[.]"). Plaintiff's causes of action for breach of contract also fail. Defendant did not withhold benefits due because coverage was excluded under the Virus Exclusion. Absent an actual withholding of benefits due, there is no breach of contract.

While there is no doubt that the COVID-19 pandemic severely affected Plaintiff's restaurant, Defendant cannot be liable to provide coverage when the Virus Exclusion plainly bars Plaintiff's claim. Given the plain language of the insurance contract between the parties, the Court cannot deviate from this finding without in effect re-writing the Policy. Therefore, the Motion to Dismiss is **GRANTED**.

### IV.   CONCLUSION

For the reasons contained herein, (1) Defendant's Motion to Dismiss (Doc. 6) is **DENIED AS MOOT** and (2) Defendant's Motion to Dismiss the Amended Complaint (Doc. 15) is **GRANTED**. An accompanying Order shall issue.

Dated: 11/5/2020                                                          /s/ Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge